JAMES Q. NEWTON TRUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES Q. NEWTON, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97324, 97325. Promulgated August 6, 1940.

*Richard M. Davis, Esq.,* and *Quigg Newton, Jr., Esq.,* for the petitioners.

*Angus R. Shannon, Jr., Esq.,* and *Carroll Walker, Esq.,* for the respondent.

476

## OPINION.

Harron: The petitioners contend that the reorganization of Fuel & Iron and Industrial under section 77B of the Bankruptcy Act, which resulted in an exchange of bonds of Industrial for bonds and stock of the new company, constituted a reorganization as defined in either provision (A) or (C) of section 112 (g) (1) [2] of the Revenue Act of 1936, so that recognition of gain or loss is precluded under section 112

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*         \*         \*         \*         \*         \*         \*

  (g) Definition of Reorganization.—As used in this section and section 113—

  (1) The term "reorganization" means (A) a statutory merger or consolidation, \* \* \* or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form or place of organization, however effected.

(a) and (b) (3) [3] of the same act. The petitioners further contend that, if the transaction did not constitute a "reorganization" within the meaning of the above sections, nevertheless any gain resulting therefrom is nontaxable under section 112 (b) (5) of the Revenue Act of 1936.[4]

The respondent contends that there was not a "statutory merger or consolidation" within (A) of section 112 (g) (1), since the facts fail to show that the plan of reorganization under section 77B was executed by a merger or consolidation in pursuance of the laws of Colorado or Federal law. Respondent relies upon the statement in article 112 (g)–2 of Regulations 94 that, "The words 'statutory merger or consolidation' refer to a merger or a consolidation effected in pursuance of the corporation laws of the United States or a State or Territory or the District of Columbia." The respondent also contends that the reorganization under section 77B of the Bankruptcy Act does not come within the definition of a reorganization in the applicable revenue act, within (C) of section 112 (g) (1). Respondent argues that the bondholders of Industrial may not be considered as the "stockholders of the transferor." He relies on the fact that stockholders of Fuel & Iron were given warrants to buy stock in the new company. But, conceding for purposes of argument, that the stockholders of the transferor lost their equity in the properties transferred to the new company and that this case comes within the rule of *Commissioner* v. *Kitselman*, 89 Fed. (2d) 458; certiorari denied, 302 U. S. 709, respondent argues that the opinion in *LeTulle* v. *Scofield*, 308 U. S. 415, strongly indicates that the *Kitselman* case was wrongly decided. Respondent concedes that the facts in the *LeTulle* case differ from and are not analogous to the facts in the *Kitselman* case or in this case.

---

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange to two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

Petitioner urges at length that there was a "statutory" consolidation of Industrial and Fuel & Iron under a Federal statute, namely, subsection (b) (9) of section 77B of the Bankruptcy Act. See United States Statutes at Large, 73d Cong., vol. 48–1, pp. 912–914.[5] We do not agree with this contention. First, in our opinion the Commissioner's statement in article 112 (g)–2 of Regulations 94, quoted above, appears to be correct and a statement of the obvious. Second, the power to effect a consolidation of corporations "must be derived from the law of the sovereignty or state which creates the corporation seeking to exercise it", Fletcher, Cyclopedia of Corporations, vol. 15, ch. 61, sec. 7048, and the steps and proceedings to effect a consolidation are formal and must be in accordance with the law of the jurisdiction. Fletcher, Cyclopedia of Corporations, *supra*, secs. 7066–7074. While a corporation formed to carry out steps in a plan of reorganization under section 77B of the Bankruptcy Act may be under the control of the Federal District Court having jurisdiction, a new corporation can come into existence only in compliance with state authority. *Old Fort Improvement Co.* v. *Lea*, 89 Fed. (2d) 286. In the proceedings involved here, the charter of the new company was obtained from the State of Colorado. The statutes of Colorado prescribe the way in which a consolidation may be consummated. Comp. Laws of Colorado, 1921, ch. 38 D., p. 754, sec. 2287; 1935 Colorado Stats. Ann., ch. 41, sec. 54. So far as the facts show, no articles of consolidation or merger were filed in the proper state office. The plan of reorganization approved by the District Court does not refer to a consolidation as the means of executing the plan. The provisions of subsection (b) (9) of section 77B of the Bankruptcy Act provide for several *permissive methods of executing* a plan of reorganization, among which are a merger or consolidation. But it may not be assumed that a "statutory merger or consolidation" was effected merely from the general facts relating to the way in which a reorganization under section 77B is executed. It is a matter to be proved whether such a plan of reorganization was executed by a statutory merger or consolidation, and, in our opinion, petitioner has not so proved in this case. See also Report of Committee on Ways and Means, No. 704, 73d Cong., 2d sess., p. 14, for the reasons for inserting the word "statutory" before "merger or consolidation" in section 112 (g) (1) (A) of the Revenue Act of 1934.

---

[5] SEC. 77B. CORPORATE REORGANIZATIONS— * * *

(b) A plan of reorganization within the meaning of this section * * * (9) shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation or to other corporations, or the consolidation of the properties of the debtor with those of another corporation, or the merger or consolidation of the debtor into or with another corporation or corporations, or * * *.

However, we are of the opinion that the reorganization under section 77B of the Bankruptcy Act constituted a reorganization under section 112 (b) (3) of the Revenue Act of 1936, within (C) of section 112 (g) (1). In our opinion the situation here is very much like the situation in the *Kitselman* case, *supra*, and the question is controlled by that case. In the *Kitselman* case, after the various steps had been taken the *bondholders* of the old company were in control of the new company, and this somewhat unusual situation presented difficulty because section 112 (g) (1) (C) predicates a reorganization on the requirement that the transferor or the *stockholders* of the transferor be in control of the new company. The court reasoned that where the old company is insolvent and its assets are transferred to a new company formed by the bondholders' representatives, the bondholders occupy a status somewhat akin to that of preferred stockholders, for all practical purposes. The court stated the following:

Bondholders ordinarily are viewed as creditors, but when the assets of the corporation are less than its obligations, the bondholders are in actuality and for all practical purposes pretty much the corporation. * * *

It is clear that the bondholders were the moving spirit and were treated as the owners in fact, and it follows that they must be viewed as a class of "stockholders" somewhat akin to preferred stockholders with cumulative dividend rights. * * * Where the assets of the corporation fall far below the amount required to pay the bondholders in full, the bondholders in bankruptcy reorganization supersede the stockholders. They acquire the stockholders' rights to manage the corporate affairs. There is a difference between the position of stockholders in a case like the present one and stockholders of a corporation in bankruptcy proceeding under section 77B (U. S. C. A. § 207) to a reorganization, but the analogies are sufficient to justify a study of the decisions in the latter field.

The above reference in the quotation to a reorganization under section 77B of the Bankruptcy Act is significant here. In our opinion the situation in this case is as favorable, if not more favorable, to petitioner's contention than was the situation in the *Kitselman* case, because here there was a reorganization under section 77B of the Bankruptcy Act.

As in the *Kitselman* case, the difficulty is that of determining whether the holders of the Industrial bonds were the "transferor or its stockholders" within that clause in (C) of section 112 (g) (1). The situation is somewhat more complex here because there were two transferors, Industrial and Fuel & Iron, albeit they were subsidiary and parent corporations, and the holders of the Industrial bonds were creditors of both companies, Fuel & Iron having acquired substantially all the assets, securing the bonds under a first mortgage, and having unconditionally guaranteed the interest and principal of the bonds of Industrial. However, this complexity is not impor-

tant, in our opinion. Neither the bondholders nor the stockholders of either of the old companies received any profit from the reorganization. The old companies transferred all their assets to the new company and immediately thereafter the old companies, through the bondholders, were in control of the corporation to which the assets were transferred. The holders of Industrial bonds were creditors having claims aggregating $27,633,000 for principal due, and $2,763,300 for interest due. They were the creditors with prior claims, secured by a first mortgage on assets in the hands of Fuel & Iron, and they were treated as the owners in fact of the assets transferred to the new company. It must follow here, as in the *Kitselman* case, that the holders of the Industrial bonds be viewed as a class of "stockholders." So viewed, they come within (C) of section 112 (g) (1).

The following is pointed out in support of the above conclusion. Industrial and Fuel & Iron had been placed in receivership and had petitioned for a reorganization under section 77B of the Bankruptcy Act. The stockholders of both of the companies had lost their equity. This was recognized by the plan of reorganization, under which the entire ownership of the new company was turned over to the holders of Industrial bonds, and the stockholders were given, merely, warrants entitling them to purchase stock in the new company at a price considerably above the then market value. The treatment accorded various security holders of the old companies is described in the plan of reorganization as follows:

Under the Plan, the Industrial Bondholders are to receive for each $1,000 principal amount of Bonds (together with the unpaid interest thereon which amounted to 10% to February 1, 1935): (a) $400 principal amount of new 5% Income Mortgage Bonds and (b) 20 shares of new Common Stock. *The Industrial Bondholders are to receive all of the new Income Mortgage Bonds and all of the new Common Stock of the New Company to be presently issued in the reorganization.* The entire issue of Industrial Bonds outstanding in the aggregate principal amount of $27,633,000 is in default. Interest on the Industrial Bonds accrued and unpaid to February 1, 1935 amounts to $2,763,300. Accordingly, in the first instance, *the Plan gives to the holders of the Industrial Bonds the entire ownership and control of the New Company,* subject to $4,500,000 of Fuel Bonds which are undisturbed in the reorganization.

The Plan, however, does not in its effect on stockholders operate as a strict foreclosure, since the stockholders are to receive Warrants entitling them at their option to purchase, at any time until February 1, 1950, a stock equity in the New Company at $35 per share. The price at which *stockholders, under the terms of such Warrants, may regain an equity position in the enterprise,* takes into consideration the basis upon which the Industrial Bondholders are to receive shares of new Common Stock in exchange for that part of their debt not covered by new Income Mortgage bonds. [Emphasis supplied.]

The assets of the old companies were transferred to the new company, and immediately thereafter the bondholders were in control of the new company by virtue of the immediate transfer of 552,660 shares

of stock of the new company to the reorganization managers, who were the agents of the bondholders. The holders of warrants to purchase new stock in the new company had no control. Control relates to issued, not to authorized, stock. *Louangel Holding Corporation* v. *Anderson*, 9 Fed. Supp. 550; *C. T. Investment Co.* v. *Commissioner*, 88 Fed. (2d) 582. Clearly there was an exchange of securities in one corporation a party to a reorganization, in pursuance of a plan of reorganization, solely for securities in another corporation a party to the reorganization. (Sec. 112 (b) (3).) All three corporations were parties to the reorganization. (Sec. 112 (g) (2).) The bondholders of Industrial retained a substantial stake or proprietary interest in the enterprise. There was a continuity of interest of the transferors in the transferee, evidenced by stocks and bonds of the new company. The holders of Industrial bonds acquired the stockholders' rights to manage the corporate affairs.

With respect to the argument of respondent that the opinion in the *LeTulle* case indicates that the decision in the *Kitselman* case is wrong, and that *Helvering* v. *Tyng*, 308 U. S. 527, also points that way, we believe the argument without merit. The fact that the bondholders herein retained a proprietary interest in the enterprise is a material difference between the factual situation in this case and the factual situation in either the *LeTulle* case or the *Tyng* case. Such cases are therefore clearly distinguishable and not applicable here. In the *LeTulle* case when a stockholder of the transferor received bonds and cash of the transferee in exchange for his stocks, there was no continuity of interest. In the *Tyng* case, where the stockholders of the transferors received cash and long term indebtedness of the transferee in exchange for their stock, there was no continuity of interest. In both the *LeTulle* case and the *Tyng* case stockholders of the transferor became mere creditors of the transferee, whereas in this case creditors (the Industrial bondholders) became stockholders of the transferee, and after the transfer they were in control of the corporation to which the assets were transferred. Also, we believe that *E. P. Raymond*, 37 B. T. A. 423, cited by respondent, is not applicable here. The point in this case is that the bondholders received all the presently issued stock of the new company, thereby gaining *control* thereof.

It is held that the reorganization under section 77B of the Bankruptcy Act was executed so as to constitute a reorganization as defined in section 112 (g) (1) (C), and the gain or loss resulting therefrom is not recognizable under section 112 (b) (3). See also *Commissioner* v. *Newberry Lumber & Chemical Co.*, 94 Fed. (2d) 447; *Marlborough House, Inc.*, 40 B. T. A. 882; *Edith M. Greenwood*, 41 B. T. A. 664; *Alabama Asphaltic Limestone Co.*, 41 B. T. A. 324.

**484**

In view of the foregoing it is not necessary to consider whether or not the transactions come within section 112 (b) (5).

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Van Fossan, Leech, Turner, and Disney dissent.

Murdock dissents for reasons expressed in his dissent in *Alabama Asphaltic Limestone Co.*, 41 B. T. A. 324.